Case today is Universal Protection Services, LLC v. National Labor Relations Board. All right, whenever you're ready. Thank you, Mr. Crawford. Good morning, Your Honors, distinguished panel. May it please the Court, my name is Matthew Crawford. I'm with the law firm of Martinson, Hasbrook & Simon, and I represent the Petitioner v. National Labor Relations Board, Petitioner-Cross Appellant in this matter. Universal Protection Service, LLC DBA, Allied Universal Security Services. We're here today to ask this Court to deny enforcement of an order of the National Labor Relations Board ordering my client to bargain with a group of lieutenants who are employed by Allied Universal at the Turkey Point Nuclear Facility. The reason we are challenging that order is that we believe that those lieutenants are supervisors as defined in the National Labor Relations Act and that supervisors are excluded from the coverage of the National Labor Relations Act. This is not a small thing. The protection and exclusion of supervisors from the Act is a What's your, I'm going to cut to the heart of things here. We're certainly familiar with the law. What is your best evidence, not just that they were supervisors, but that it's so clear that they were supervisors that the Board's decision was, that substantial evidence does not even support the Board's decision? Sure, absolutely. And I would call your Honor's attention to a point that was undisputed during the underlying hearing. And that is that when the supervisors exist, or the lieutenants exist to make sure that the officers are following rules and doing their job properly. To a person, every person who testified at the hearing stated that they have a wide menu of options to draw from when determining how to address that violation or that failure to meet performance standards. They can go to discipline, they can make a written warning, or they can make a verbal warning, or they can give what's called a coaching. That is a non-disciplinary event that basically is a nudge to an otherwise well-performing officer that, look, you're not doing something right here. I'm bringing it to your attention. I'm giving you the opportunity to improve before we take that to the formal disciplinary process. Wasn't there testimony that, yes, there were a menu of options available to the lieutenants, a grid or a chart, so they would see the violation, they would then go to the chart, see what the discipline was, and impose the discipline, so there wasn't a whole lot of discretion? Well, the chart, by its own description, is a guideline. It states, and again, everyone who testified acknowledged that the lieutenants could deviate from that chart in appropriate circumstances. There's especially worth noting in connection with this chart, it's 1308 is the name of the policy, and I really want to call your attention to a difference in the language, and it underscores how inherently discretionary this process is. There's a level three violation, which is a documented verbal warning, and it comes into play in situations in which there is a failure to meet satisfactory job performance or behavior standards in the opinion of management. That's what it says. There is a separate level two violation, and it reads, failure to meet satisfactory job performance or behavior standards in the opinion of management that has greater consequences than a level three infraction. To me, that is an inherently discretionary judgment made by the lieutenant of how serious the infraction is. But wasn't there testimony that the lieutenants were also subject to discipline if they chose incorrectly, and so they were oftentimes consulting with their managers to ensure that they were choosing the correct option? There is exactly one instance of evidence in the record of a lieutenant being disciplined for not issuing... But why doesn't that provide substantial evidence? Because, again, if you would look at the, first of all, look at the language of that write-up. It does not say this has to be a write-up, period. It says, in most circumstances, this violation is a level three offense. You wrote it up, or you didn't write it up, you treated it as a non-disciplinary counseling. If you are going to do that, you need to make sure that you can articulate sufficient mitigating factors. And it was that failure, it was the failure to properly exercise the discretion that led to the discipline. But that's not really my question. So you only have one incidence of discipline, but it means discipline is available to the lieutenants. So it wasn't their testimony that the lieutenants were concerned about the possibility of discipline and would consult with managers to ensure that they would not face discipline? Sure, and yes, the lieutenants did testify to that. This kind of goes a little bit to the point of the level of deference that should be given. I don't think that testimony was at all credible. That testimony was largely given in response to questioning about an email from the project manager asking them to reconsider a discipline they had previously issued. And they testified in response to that, well, I just thought he was telling me what I wanted to hear, and I kept up because I was afraid I was going to get disciplined. Fear of discipline is not absence of discretion. Everyone has a boss. The analogy I keep coming back to is an official in a sporting event. An NFL referee has discretion to make, for example, a pass interference call. He has a boss. There's somebody who goes back and looks at it after the fact and says, you know, yeah, that was bad. That was a really poor exercise of your discretion. And officials get disciplined for that. They get pulled off games. But what doesn't happen and what didn't happen in this situation was somebody higher up went back and actually issued the discipline. What's relevant is that the decision of the lieutenant stood. It's what carried the day. The lieutenants can't suspend or discharge employees, right? That's correct, but that's not required. All that is required is that they have the ability to issue discipline, which starts the employee on the path to a tangible employment action. But suspension is discipline and discharge is discipline, correct? That's right. So there are certain areas of discipline that they don't have the power. That's correct. Section 211 has a list of, gosh, I think it's 13 or 14 different types of authority that a supervisor can have in order to have supervisory status. And the law is very clear. You only have to have one of them. And discipline is listed separately from termination. And gosh, I don't have that part of it memorized, but I believe the statute even separately lists suspension as an indicia of supervisory authority. How much variance do you have between discipline rates for different lieutenants? Does that make sense? It does. There's not evidence of that in the record. But I think relevant to your point, Your Honor, is there is evidence in the record of what everybody agreed were nearly identical violations. And this goes back to the colloquy between the project manager and the lieutenants where the union challenged the discipline. Two of those disciplines, there are three disciplines total, two of them were level two. I'm sorry, two of them were level three and one of them were level two. So we have in the record an example of a situation in which three different supervisors faced with nearly identical circumstances came to different decisions. So again, it's not directly responsive to your question, Your Honor. But again, I think it shows that there is a divergence, there is a variance between what the lieutenants are actually doing on the ground in terms of the discipline they issue. This is a more, I don't know if thematic is the right word, but a question that may not directly relate to anything. But the facility here is a nuclear facility, right? It is. Wouldn't you assume that you'd like to have, as the public, relatively firm discipline standards at that sort of a facility? Yes, absolutely. So doesn't that suggest that this grid is there for a reason to remove a certain amount of discretion given the sensitivity of the facility? No, I don't agree with that proposition, Your Honor, because you can accept, I think we all accept that it is important to enforce rules in any worksite. Yes, it's particularly important in the context of a nuclear power plant. But there's still ample evidence of discretion among the lieutenants as to how to handle violations. Not only whether or not to issue discipline, but also what level of discipline to issue. And just to make sure I understand the record completely, really the only issue that you're arguing on for the supervisory status is the discipline piece, right? That's correct, Your Honor. Okay, thank you. And remind me what the other duties of lieutenants are besides discipline. Sure, we had argued below that they also are involved in the hiring process and that they also are involved in the direction of the workforce. But in terms of what we asked this court to review, we focused on the issuance of discipline. But on a day-to-day basis, these individuals are managing kind of, what are they doing? What does a day at work look like? In very brief. Yeah, a day at work consists of them going around to the various posts where the officers are located and reviewing what the officers are doing, making sure that they're attentive, that they're in their proper uniform, that they are following proper procedure, and that when they check in and check out their equipment and things like that at the end of the day, that everything is done properly. And reviewing daily activity reports to make sure that, again, everything that's happened during the day has been done correctly. Got it. Thank you. Thank you. All right, thank you very much. And you've reserved five minutes. We'll hear first from the NLRB. Thank you, Your Honor. May it please the Court. My name is Neelakshmi Rajapaksa. I'm counsel for the National Labor Relations Board. This case, as the discussion just a minute ago shows, it presents a very straightforward factual question of whether the lieutenants at the Florida City facility apply independent judgment in issuing discipline to employees. The record in this case shows very clearly that their choices in terms of the limited discipline they can issue are constrained in two important ways, by an intricate set of policies that govern discipline at this facility and procedures. They're also constrained by past practice. There's an effort to be consistent and fair, particularly because the security officers that these lieutenants purportedly supervise are unionized, and they can file grievances if there's any sort of perceived unfairness about discipline. So there are those two things that make the decision-making process fairly rote. What do we make of the evidence that your friend on the other side suggested where, for example, there was a similar infraction, two supervisors addressed it under Level 3 and one addressed it under Level 2? I think my colleague on the other side is referring to an incident involving Lieutenant Kruger, who actually testified that he was told to lower the level of discipline because his captain thought this was a shifting area of policy, and so a lower form of discipline was warranted. So he didn't make that independent assessment. And in fact, all four of the lieutenants who testified at the hearing testified consistently that not only are they constrained by policy and past practice, they actively seek the guidance of their captains and higher-ups, and that's another thing that the documentary evidence in this case corroborates. They routinely seek guidance when there's any sort of even minor gray area in the procedures. They do seek guidance, and I would direct the Court's attention to Lieutenant Kruger's testimony at pages 112 and 113 of the Joint Appendix. Lieutenant Gonzales saying essentially the same thing at Joint Appendix 163, Lieutenant Correa at Joint Appendix 295, and Lieutenant Aviles at 303 to 304. They were all very consistent about this. And there is also a telling piece of documentary evidence in the record that I think will be very informative to the Court. It's Employer's Exhibit 54, which is in the record at pages 563 to 565. It basically shows Lieutenant Gonzales, who is a lieutenant that the employer has emphasized a great deal because he conceded that there are times when the policy doesn't direct what you have to do. In this exhibit, you see Lieutenant Gonzales recommending a coaching of an employee for an infraction that he didn't think was serious enough to warrant discipline. And you see the project manager of the facility pushing back, literally using the words pushing back, and strongly suggesting that it would be difficult to justify not disciplining this employee. And then you have the testimony of Lieutenant Gonzales at pages 145 and 150 of the transcript, where he says, My captain came to me after I received the email from the project manager, and he told me I could face discipline if I don't issue the discipline that the project manager thinks is appropriate. And that is consistent with the testimony of, again, all of the lieutenants, that they are very much in fear of facing discipline themselves if they don't issue what is viewed as the correct discipline to security officers, consistent with policy, consistent with past practice. So on this record, there is more than substantial evidence that these lieutenants are not exercising independent judgment. And I have to emphasize that before the board, it was the employer's burden to prove that these lieutenants are supervisors. What effect will this NLRB decision have on UPS at other job sites? What I mean by that is, here we have a nuclear facility, as Judge Grant explored, there was a very detailed checklist, perhaps, that is driven by some of the regulatory framework of the nuclear facility. And the decision the board has rendered is that these lieutenants are not supervisors. Suppose there is an effort to unionize lieutenants at another job site where the lieutenants have more discretion. Do we start over with the inquiry, or does this decision at the nuclear site have some carryover effect at another job site? I don't think it would have a carryover effect, Your Honor, because each of these cases is so fact dependent. And you see that in the history, in the procedural history of this case. There have been several times where the employer has claimed that these people are lieutenants. It's not exactly the same employer. It's predecessor employers. But each time, the board carefully looked at the employer's arguments to see whether they had met the burden. The same would be true at a different facility. There's a question about the status of guards or lieutenants. It would have to be decided based on the record developed in that case. So UPS could have lieutenants at some job sites who are entitled to unionize, and lieutenants at other job sites who are not entitled? Absolutely. It would depend on the evidence in the record and whether they have the ability to exercise independent judgment in performing one of the 11 functions that are listed in Section 211 of the Act. If the court has no further questions for me, I'll close. The board does request full enforcement of its order. Thank you. All right. Thank you, Ms. Rajapaksa. And we'll hear next from Ms. Helton. Good morning. May it please the court, Rachel Helton appearing on behalf of the intervener, the International Union, Security, Police, and Fire Professionals of America. And Counsel for the NLRB touched on it briefly, but I wanted to highlight the factual support for the NLRB's conclusion that these lieutenants are not supervisors within the meaning of the Act by looking at the history of board determinations concerning this particular unit of employees. I'm sure the court has reviewed this, but to highlight the election case that is the genesis of what brings us here today was not the first time that Region 12 of the NLRB or the board grappled with the issue of whether these particular employees are supervisors. There was a petition to represent a unit of employees at that time called sergeants. Now they've been changed to lieutenants. True, but, I mean, facts on the ground can change. True. I agree with that, Your Honor. But the record developed at that time revealed that they were doing the same things that they are doing now, essentially. That they were not involved in the 10 indicia of Section 211 of the Act, which lays out the supervisory indicia. So in 2002, that unit was certified and the board declined to review it. In 2015, the board again revisited the determination as to whether lieutenants were supervisors when the employer disciplined a unit of, or two lieutenants, rejecting the employer's argument that those lieutenants are supervisors. How, if at all, should we consider the lieutenant's obvious desire to be unionized? I'm sorry, in what way? In, you know, obviously the company, the facility has interest in them not being unionized, right? And so they present kind of the evidence a certain way. The lieutenants do have an interest in being unionized. How do we, do we consider those interests in weighing their testimony or not? I don't believe that you should, Your Honor. They all testified under oath and answered the questions truthfully, including some, they were very candid about what they are able to do. And the fact that they can do these documented coachings, they can do other things that on their face would be indicative of supervisory status. But the reason that they are not indicative of supervisory status here is that they lack independent judgment. So not only must they be able to do the discipline, they must have independent judgment while doing so. And there's been no assertion that any of them were being untruthful, right? There has been no assertion of that, Your Honor. And so in addition to those cases from 2003 and 2015, there was yet another election determination in 2017 when these same employees were found not to be supervisors within the meaning of the act. And that unit was actually certified and became a bargaining unit at that time. Well, can I ask you a question?  Is there anything that we should take from the Fifth Circuit's decision in STP, Nuclear Operating Company, versus NLRB? Or is that just, you know, distinguishable on its own facts? I believe distinguishable on its own facts, Your Honor. I would argue in this case there was a complete representation hearing. There was a decision by Region 12. The board declined to review it. Then there was an overwhelming election victory, as Judge Grant alluded to. There were no votes cast against representation. And we then had the refusal to bargain. And again, a determination at both the regional and the board levels that these employees were not statutory supervisors. And that's because at every one of these proceedings, the employer failed to prove that lieutenants perform supervisory duties while using independent judgment. I wanted to conclude by citing a portion of this court's decision last week issued in the Southwest Symphony Orchestra versus NLRB case that this court issued on February 19th. It's Case 25-101. It's unpublished, though. It is unpublished. Correct. We don't consider it presidential. All right. I just was hoping that you would take into account that there was a very nice piece of language that this court used that said, that's a question of facts peculiarly suited to this board's expertise. And I would submit to you that here what you have is a question of fact that was also peculiarly suited to the board's expertise. Our lieutenant supervisors, the board found that they were not weighing the facts at issue. So we are requesting that you do the same and affirm the multiple holdings of this board, that lieutenants are not supervisors. All right. Thank you very much, Ms. Hilton. Thank you. We'll hear back from Mr. Crawford, and you've reserved five minutes.  I think that the point that I would really rebut with, and I would ask your honors to take away from this, is that discretion and independent judgment does not mean unfettered discretion and independent judgment. Everybody has a boss. Everybody is subject to performance review. Everybody is subject to a discussion with their immediate supervisor of, yes, this is within your job, but you didn't do this well, and you need to do it differently. And I think that is the light in which you need to look at evidence like Employers' Exhibit 54. It's the exception that proves the rule. Because if we're going to take the intervener and the NLRB's position that these supervisors have no, or these lieutenants have no discretion and independent judgment, they just do what they're told by the captains and the project manager, what's the point of the email? Just tell them. Issue the discipline. But if you read it, the only way to take it away is in the context of this is performance management. I'm pushing back. I'm asking you to consider these things. It shows that the final decision is in the discretion of the supervisors. On the question of them seeking guidance, I think the critical piece of that argument is just that, guidance. Every single one of the lieutenants who testified, the project manager who testified, and the captain who testified said lieutenants do not have to get permission from a captain or any higher-ups before issuing discipline. They can issue discipline on their own volition, on their own investigation, and on their own determination of what happened. The fact that some lieutenants, and a lot of them testified that they were seeking this guidance because they were new and because they were uncertain about the bounds of their authority, but they sought it to get guidance and input. And this idea that they were also looking at past practice, I think to me that underscores the existence of discretion here. The whole basis of the, or at least part of the basis of the regional director's decision was that, look, all you've got to do is look at policy 1308 and that tells you exactly what you need to do. Well, if that were the case, there would be no need to have a discussion with captains. And, by the way, other lieutenants, other lieutenants were just as often part of the discussion as were the captains because you're getting input. You are in a unionized environment. You're in the United States of America where, you judges know as well as anybody, there are myriad laws against discrimination. And one of the elements of a company protecting itself against discrimination is making sure that like circumstances are treated like. It's not a limitation of supervisory status. It's not a limitation of discretion that destroys supervisory status. It's a good HR practice and it is not nearly the handcuffing or the limitation that the board is making it out to be. We believe, set all of that aside. Set aside the idea that, look, once the decision to issue discipline has been made, that you're bound and handcuffed by the policy and past practice. That still doesn't get around the fact that every lieutenant who testified said it is their discretion. It is their determination whether to issue discipline in the first place. And they all acknowledged it depends upon all of the circumstances and different lieutenants can come to different decisions. And then finally, the fact that the lieutenants themselves feel constrained and that they have to get guidance from their higher ups. The NLRB itself has repeatedly held that it is not the, you don't have to show an exercise of discretion to show supervisory status. You merely have to show its existence and that certain lieutenants did not feel confident enough to issue, to follow that discretion totally on their own does not overcome, again, the clear and undisputed evidence that they, in fact, had this authority. Thank you very much, counsel. We'll be in recess until tomorrow.